Hernandez v. Cardoso Mr. Young May it please the court, my name is Adam Young on behalf of the appellant, Mr. John Coahuila. Mr. Coahuila filed this Hague Convention petition for the return of his minor child, A.E., to Mexico for a custody determination. The district court held that Coahuila proved his case for return and the burden shifted to Cardoso to prove one of the narrow exceptions to return. The exception at issue here is Article 13b, under which Cardoso had the burden to prove a grave risk of physical or psychological harm to the child if returned to Mexico by clear and convincing evidence. The grave risk standard looks to prospective harm and takes into account both the magnitude, the severity of the potential harm, and the probability that that harm will occur. As to the magnitude of the harm, the case law is clear that the physical or psychological harm must be severe and substantial, as in serious abuse or neglect. As to probability of harm, there must be a real risk of harm in the immediate future when the child returns for the custody determination. Probability is proved through a record of frequent and pervasive abuse. The judge applied an incorrect standard here. She held that a non-negligible probability existed of some injury occurring someday after the return. She did not examine whether there was an immediate risk of harm that would be severe and substantial, which is the proper standard. But even if she had applied the correct standard, under the facts referenced in this short opinion or available in this record, Cardoso did not make a clear and convincing proof of a grave risk of harm. The opinion credits just one severe instance of violence by Mr. Coahuila in 2004, and the isolated incidents since 2002, all involving corporal punishment. Cardoso did not establish that any of these instances were particularly severe, and three events over 12 years does not show frequency, much less a pervasive pattern of serious child abuse. The opinion then attempts to fill in the lack of evidence with vague testimony about spousal abuse and corporal punishment. This is not clear and convincing evidence. First, the opinion relied on a severe incident of spousal battery in March 2004. We do not contone the abuse of women, and the allegations of abuse in 2004 are abhorrent. However, Coahuila's abuse of Cardoso in 2004 was 12 years ago, four years before this child's birth, and involved Ms. Cardoso, who is no longer living with Mr. Coahuila. This incident alone does not prove that this child now faces a severe and immediate risk of physical harm if he is returned to Mexico. That's the only instance of violence in the judge's opinion, and if we look in the record, there's only three other specific allegations of violence. The second incident was in 2012. Ms. Cardoso's sister described that she heard Mr. Coahuila disciplining the children with a belt for not eating their lunch. The incident was not evidenced by any eyewitness testimony or even corroborated by Ms. Cardoso. There's no evidence in the record as to the severity of the corporal punishment, or if it was any different in the type of belt disciplining that Ms. Cardoso admitted to doing herself to the children. The third incident was in 2014. When the child was three years old, Mr. Coahuila allegedly hit the child as a reprimand for failing to feed roosters. No facts in the record indicate how severe he was hit, how he was hit, or if it caused any harm. Finally, the record included Ms. Cardoso's hearsay testimony concerning a 2014 incident where Coahuila allegedly hit the daughter and bruised her leg. There's no evidence as to the circumstances of this incident, and there's no eyewitness testimony. Other than this 2004 domestic violence incident and three corporal punishment incidents over 12 years, the record included no specific factual testimony about incidents of physical abuse. The opinion relied on vague testimony that Cardoso hit the children with a belt very hard, that he did it a lot. Cardoso proffered no specific dates, no frequencies of the alleged abuse, and no accounts of disparity or this child being injured in any way at any time. The corporal punishment in this record was not severe, and as I said, it's entirely consistent with what Ms. Cardoso admitted to doing herself. It pales in comparison to the child abuse at issue in cases that have found a great risk of harm. These facts are insufficient to show that this child faces an immediate risk of severe child abuse if he's returned to Mexico. And as to spousal abuse, the opinion credited one specific instance 12 years ago that was severe. Other than that, the record again contains vague allegations. He would always chase me. He harassed me. He would mistreat me. He would hit me in front of the children. Cardoso put forth no specific dates, no specific frequencies of spousal abuse, no explanation of the magnitude of the harm, and no evidence of any specific psychological effects on the child. Because these spouses are separated, the case law provides that the danger of the child being psychologically harmed from exposure to spousal conflicts is eliminated or significantly diminished. Here, to find psychological harm, the judge relied on the child becoming sad when questioned and changing his demeanor as he discussed domestic violence and a return to Mexico. There's no evidence in the record about the child suffering any specific psychological injuries, receiving psychological treatment, or receiving psychological treatment. A child witnessing spousal abuse standing alone is insufficient to prove a grave risk of psychological harm. And the child becoming sad simply does not meet the burden of clear and convincing evidence of an immediate risk of severe psychological harm. Finally, Cardoso also abducted this child's older sister with her to the United States. She then sent the daughter back to Mexico voluntarily and at the child's request to live with Mr. Coahuila. Cardoso does not allege that Coahuila abused this daughter in any way in the last two years that she lived in Mexico. And the court concluded that sending the daughter back was a mistake. And that was a clearly erroneous factual finding, as the mother did not testify that this was a mistake. And the fact of the matter is that Cardoso returned this older child to live with Coahuila, and there's no evidence that any harm whatsoever came upon her. This goes straight to the heart of the magnitude and the probability of a grave risk of harm to the son. Cardoso's voluntary return of the daughter without abuse or incident belies Cardoso's The son now faces a grave risk of harm if he is returned to Mexico. So in conclusion, Cardoso failed to provide the clear and convincing evidence that would show a grave risk of severe physical or psychological harm to this child. Instead, Cardoso entered into the record a lot of vague allegations that didn't include any details on frequency or severity of abuse. And this is not of best interest of the child analysis. Absent specific facts indicating an actual grave risk of immediate harm, this child should be returned to Mexico for a custody determination. Are there any questions? Go ahead. Back to the judge for a second. How can you credibly argue that you had no opportunity to object to the judge's interpretation of the child's testimony, or somehow that it was incorrect when the judge offered the parties the opportunity to either view the in-camera interview or to object to the questions that were asked? We did have the opportunity to object to the questions that were asked. However, the conclusions that she makes from those questions, she asks questions, are you afraid of dad? No. Are you sure? A little. She concludes this child is sad and he changes his demeanor. And she uses that testimony improperly to find that this child is going to face a grave risk of psychological harm if returned to Mexico without any psychological testimony and without anything indicating that this child has even suffered any harm or will suffer harm in the future. And further, that pertains to the child witnessing spousal abuse. Here, these spouses are separated. If the child's returned to Mexico, he's not going to witness any spousal abuse and there's no evidence domestic violence is going on in Mexico now. Thank you. Thank you. Mr. Brigham. Good afternoon, Your Honors. May it please the Court, Philip Brigham on behalf of Irma Benitez Cardozo, the appellee in this case. The position or the question that the appellant has presented before this court is whether the court's conclusion that there was, that the evidence presented established a grave risk of harm is correct. Now, Mr. Coromillo contends that this is a question of law, that this court should review de novo. The argument in their brief and here before this court is replete with examples about the sufficiency of the evidence presented rather than about the conclusion that was made by the court. And I think that's an important distinction to recall. The court heard a lot of testimony, a lot of evidence about abuse, abuse that occurred over a period of 12 years. The court in, the district court in its opinion, begins with the first instance of abuse, the earlier instance of abuse happening 12 years prior to the case. But Ms. Cardozo testified and the court notes she testified credibly about abuse continuing throughout the relationship. The abuse began, at least per the record, when Ms. Cardozo found out that Mr. Coahuila was married to somebody else. She, the abuse continued after the daughter was born and the abuse continued after a minor childhood issue here was born. The court also found that Mr. Coahuila would beat Ms. Cardozo in the presence of both children and that in doing so he had the intent that the children witness this abuse. What are the circumstances that caused the daughter to be returned? The daughter... If the record indicates it. Certainly. The record indicates that the daughter informed Ms. Cardozo that she was going to kill herself if Ms. Cardozo did not return her to Mexico. And at that point Ms. Cardozo... How old was the daughter at that time? The daughter I believe was 13 or 14 years old. So she threatened her own life if she wasn't allowed to return? That's correct. And the mother then agreed? That's correct. So where is it in the record then that supports Judge Coleman's finding when Judge Coleman found that it was more likely that Cardozo exercised poor judgment or made an irrational decision when weighing Ms.'s expressed desires against her needs to return her to the father? Certainly. Where is that supported in the record to make that finding? Your Honor, my impression is that that came from Ms. Cardozo's testimony about this threat that her daughter had made, about this threat of suicide. And that Judge Coleman, upon hearing that, made the determination based on Ms. Cardozo's words and her demeanor that she was scared in a situation where she didn't know which way to turn. Now, the record also shows that Coahuila abused the minor child. So this is not simply a case of domestic abuse against the child's mother. This is a case of abuse against the mother and the child at issue in this case as well. The record shows that he beat the child, and contrary to the argument that you previously heard, the record shows that he beat the child once, at least once, every other month. And beat him with a belt. What do you mean by beat? I beg your pardon? What do you mean by beat? Beat him with a belt. Beat the child with a belt. Did Ms. Cardozo testify that she also used a belt on the child occasionally? Ms. Cardozo testified that she used her hand, and she occasionally used a shoe. She did not testify that she used a belt. However, Ms. Cardozo testified that the beatings from Mr. Coahuila were more severe in the amount of force that was used in beating the child. And the court notes that she credited that testimony as well. These facts establish or provide a justification for a finding of a grave risk of harm. Is there anything in the record as to how MS is done since she was returned to her father? No, Your Honor. Okay. Under this court's holding in Bandasat, in that case there was evidence of physical abuse of the mother over a period of five years, some physical abuse of the daughter, some spankings. The daughter in that case was once grabbed by her throat and shoved out of the room, and once a sharp blow was struck to the side of her head. And no abuse in that case of the son over that entire five-year period. The abuse here in this case is more severe than that. I'm talking about a 12-year period of abuse with both abuse of the son that is at issue here. Now, Mr. Coahuila relied on the language from the opinion from Judge Coleman's ruling about a non-negligible risk and says that that indicates that Judge Coleman used the wrong standard. But that language can be seen in this court's ruling in Bandasat. On page 570 of Bandasat, the court wrote, the probability that Davey or his mother, another person of violent temper, if the affidavits are true, would someday lose control and inflict actual physical injury on the children, or at least on the daughter, could not be thought negligible. In other words, in Bandasat, this court found that there was a non-negligible risk of physical harm, just as the district court found here. And that was enough to establish the grave risk of harm exception. Other courts, other circuits have similarly found that the existence of abuse of the mother in the presence of the children, combined with something more, is sufficient to establish a grave risk of harm. And that's what we have here. The 8th Circuit held in Acosta, where there was only verbal abuse of the mother in the presence of the children, and only one instance of physical abuse of the children, in that one child was pushed onto a bed, that physically aggressive actions directed towards others added this something more. In Baran, the 11th Circuit found that alcoholism and a violent temper established a grave risk of harm, even again, in the absence of any physical abuse of the child. The facts here are more severe than both of those cases. Again, here we have 12 years of abuse. Now, Mr. Koawila also notes that there was no expert or no testimony about psychological harm presented in this case. And that's true. But there's no requirement that there be any expert testimony about harm to the child, especially in the instance where the harm to the child was done to the child directly, where there's physical harm done to the child. This Court has held as a matter of law that it can harm the child to witness physical abuse between two parents. Mr. Koawila relies on Khan v. Fatima throughout their brief to support this position that the expert should be called to testify. But that's not what Khan v. Fatima stands for. Khan v. Fatima involved a case where the respondent, Ms. Fatima, sought to bring forward the question of grave risk of harm, sought to bring forward expert testimony, and the Court denied that. And the issue was that the District Court had overreached when it refused to allow her to present expert testimony that she had asked to present. That's not the case here. Nobody requested any expert testimony in this case. And with that, Your Honor, unless there are any further questions, I would ask this Court to uphold the order of the District Court. Thank you, Mr. Brigham. Mr. Young. Yes, may I please? The Court, specifically with regard to the non-negligible probability issue, the Court was quoting the Van de Sand case, but Van de Sand made that remark in the context of a discussion on undertakings and whether undertakings were appropriate with sending a child back to its country of original residence. It was not setting forth a new standard for Section 13b as to what a respondent had to prove. Non-negligible probability of an injury someday occurring is not consistent with grave risk as required by the statute or by the immediate risk required by Condi-Fatima and other cases in the Seventh Circuit. It's also inconsistent with a clear and convincing evidence standard, which, as you know, the Supreme Court has explained, means you have to prove something is highly probable. Did anybody forbid you from bringing up evidence as to how MS is doing in your client's custody? No, Your Honor, but I would offer that they had the burden of proving. I understand, but both sides have an opportunity. All right. That's true. And then if you compare the facts in the cases he cited today and in the brief with the facts here, they're wildly distinguishable. Acosta, the petitioner, kicked in the door, threatened the family with a knife, and then stabbed the mom's coworker. He said this is much less serious facts than the beltings that occur here. The Baran case, the father was engaging in daily binge drinking, and he threatened the life of the infant child. They're very different facts. With regard, he keeps categorizing as abuse throughout the relationship, but there's not a specific evidence of frequency and how often abuse occurred in this record, and the facts that they rely on are from 12 years ago, from 2004, from before the birth of this child in 2008. And then you asked several questions about the return of the daughter. The mother alleged that the daughter threatened her own life. She was using that to show that she exercised good judgment in sending the child back to Mexico. It was not that it was a mistake and that the child would be better off in Mexico. So did she testify that the daughter threatened her own life or not? She did. She did. But that was used to show that she had made the correct decision in sending this child back to Mr. Coahuila's custody. I understand. Thank you. All right. Thanks. Thanks to both counsels. Case is taken under advisement.